UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AARON ISAIAH YOUNG,

                Plaintiff,

        - against -

C.O. CHRISTOPHER J. KINNE,
C.O. BRUCE D. TUCKER, C.O. SCOTT A. RUPERT,
C.O. TROY LAURIA, C.O. CHAD W. EASTBROOK,
SERGEANT MICHAEL D. LOFRESE,
LIEUTENANT JOHN B. HOEFLING and
CAPTAIN A. RUSSO,

                Defendants.
-------------------------------------------------------------------X

**COMPLAINT AND**
**JURY TRIAL DEMAND**

        Plaintiff, AARON ISAIAH YOUNG, by his attorney, ALAN D. LEVINE, ESQ., complaining of the defendants herein, respectfully alleges as follows:

## JURISDICTION

        1.     This is a civil action, seeking compensatory damages, punitive damages and attorney's fees.

        2.     This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the eighth and fourteenth amendments to the Constitution of the United States.

        3.     Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343.

## VENUE

        4.     Venue is properly alleged in the Southern District of New York in that the acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

        5.     Plaintiff hereby demands a trial by jury of all issues in this action that are so triable.

**PARTIES**

6.      At all times relevant hereto, plaintiff, AARON ISAIAH YOUNG, was and is a natural person and was an inmate at the Sullivan Correctional Facility, which is a New York State prison located in the Town of Fallsburg, County of Sullivan, State of New York

7.      At all times relevant hereto, defendant C.O. CHRISTOPHER J. KINNE, (hereinafter "KINNE") was and is a natural person, employed as a correction officer by the New York State Department of Corrections and Community Supervision and was assigned to the Sullivan Correctional Facility.

8.      At all times relevant hereto, defendant C.O. BRUCE D.TUCKER (hereinafter "TUCKER") was and is a natural person, employed as a correction officer by the New York State Department of Corrections and Community Supervision and was assigned to the Sullivan Correctional Facility.

9.      At all times relevant hereto, defendant C.O. SCOTT A. RUPERT (hereinafter "RUPERT") was and is a natural person, employed as a correction officer by the New York State Department of Corrections and Community Supervision and was assigned to the Sullivan Correctional Facility.

10.      At all times relevant hereto, defendant C.O. TROY LAURIA (hereinafter "LAURIA") was and is a natural person, employed as a correction officer by the New York State Department of Corrections and Community Supervision and was assigned to the Sullivan Correctional Facility.

11.      At all times relevant hereto, defendant C.O. CHAD W. ESTABROOK, (hereinafter "ESTABROOK") was and is a natural person, employed as a correction

officer by the New York State Department of Corrections and Community Supervision and was assigned to the Sullivan Correctional Facility.

12.     At all times relevant hereto, defendant SERGEANT MICHAEL D. LOFRESE, (hereinafter "LOFRESE") was and is a natural person, employed as a sergeant by the New York State Department of Corrections and Community Supervision and was assigned to the Sullivan Correctional Facility.

13.     At all times relevant hereto, defendant LIEUTENANT JOHN B. HOEFLING (hereinafter "HOEFLING") was and is a natural person, employed as a lieutenant by  the New York State Department of Corrections and Community Supervision and was assigned to the Sullivan Correctional Facility.

14.     At all times relevant hereto, defendant CAPTAIN A. RUSSO (hereinafter "RUSSO") was and is a natural person, employed as a captain by  the New York State Department of Corrections and Community Supervision and was assigned to the Sullivan Correctional Facility.

15.     The individual defendants are sued in their individual capacities.

## FACTS

16.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" though "15" hereinabove, as if more fully set forth at length herein.

17.     On or about July 2, 2014, plaintiff arranged to provide to a female correction officer named R. Baty, who is not a party to this action, a flyer titled, "Toxins in Cigarette Smoke."

18.     Plaintiff had addressed the aforementioned flyer to C.O. Baty, had annotated the list of toxins in the flyer with hand-written comments, had included advice to C.O. Baty to stop smoking and had affixed his signature to his comments.

19.     C.O. Baty had provided the aforementioned document to Sergeant V. Fuller, who is not a party to this lawsuit.

20.     Sergeant Fuller questioned plaintiff concerning the aforementioned document.

21.     Plaintiff admitted to Sergeant V. Fuller that he had, indeed, provided the document with the annotations to C.O. Baty.

22.     Sergeant Fuller keep-locked plaintiff and prepared an inmate misbehavior report in which plaintiff was charged with violations of prison rules concerning harassment, stalking and writing to members of the facility staff.

23.     A disciplinary hearing was ultimately held on the charges, commencing on July 7, 2014, at which hearing plaintiff was found guilty of the charge of harassment and the correspondence violation.

24.     On the aforementioned dates, and for a period of time prior thereto, defendant TUCKER was involved in a romantic relationship with C.O. Baty.

25.     On or about July 5, 2014, which date was three days after plaintiff had provided the letter to C.O. Baty, at approximately 8:40 P.M., defendant KINNE ordered plaintiff to step out of the cell in which he was being keep-locked and to assume the "pat frisk position."

26.     In the pat frisk position, a prisoner is to face the wall, place his hands on the wall and stand with his legs spread apart.

27.     In the process of conducting the pat frisk, defendant KINNE yanked plaintiff's pants up so that they were between plaintiff's buttocks, and grabbed his testicles.

28.     Defendant KINNE then performed what is known as a "credit card swipe" on plaintiff, namely holding plaintiff in place with his left arm while running his right hand between plaintiff's buttocks.

29.     Defendant KINNE now told plaintiff to put his hands in his pockets, keep his head straight and his mouth shut and to walk toward the front gate of the housing area.

30.     Plaintiff did as he was told.

31.     As defendant KINNE walked behind plaintiff, defendant KINNE suddenly called out, "Hey, Young."

32.     Plaintiff turned around in response to defendant KINNE's calling to him and was immediately struck in his mouth with a pair of handcuffs.

33.     Plaintiff took his hands out of his pockets and brought them to his mouth.

34.     Defendant KINNE immediately punched plaintiff in the side of his head and tackled him so that he landed on the floor.

35.     Defendant KINNE threw himself on top of plaintiff, commenced punching him in his back and his side and yelled, "I bet you won't write my boy's girlfriend no more, will you, nigger?  You fucking black bitch."

36.     Defendants TUCKER, RUPERT, ESTABROOK, LAURIA, LOFRESE and HOEFLING arrived on the scene, upon information and belief in response to an alarm that had been sounded by defendant KINNE.

37.     Defendants KINNE, TUCKER, RUPERT, EASTBROOK and LAURIA proceeded to kick and punch plaintiff, twist his arms and yell, "Stop resisting," at him.

38.     Plaintiff was not resisting the force being visited upon him by the aforementioned defendants.

39.     Defendant TUCKER choked plaintiff, grabbed his head and banged it repeatedly on the floor, smacked him on the back of his head and said to him, "You got the balls to write my woman and don't think nothing will happen?"

40.     Defendant KINNE falsely told defendant LOFRESE, who was, upon information and belief, witnessing plaintiff being beaten, that plaintiff had said he was suffering from AIDS and was going to spit blood on defendants.

41.     Defendant LOFRESE and/or defendant HOEFLING ordered that a spit mask be put over plaintiff's face.

42.     Defendant LAURIA very tightly rear-handcuffed plaintiff.

43.     Defendant LAURIA tightly tied a spit net around plaintiff's face.

44.     The aforementioned defendants now took plaintiff to the prison's infirmary.

45.     While walking plaintiff to the infirmary, the aforementioned defendants continued to punch him and intentionally push him into walls.

46.     In the infirmary, two of the defendants took plaintiff into a room.

47.     While inside the aforementioned room, the two aforementioned defendants pushed plaintiff, face-first, into a wall and, while holding him, twisted the handcuffs in such a way as to cause him excruciating pain.

48.     A correction officer, upon information and belief named Hanson, took photographs of plaintiff's injuries.

49.     However, when plaintiff requested that color, rather than black and white, photographs be taken, defendant LOFRESE would not permit it.

50.     At one point, plaintiff was left in the aforementioned room without a nurse present, but with several defendants remaining.

51.     One or more of the defendants punched plaintiff and threw him to the floor, whereupon defendant TUCKER urinated on him, while the other defendants present watched and laughed.

52.     Plaintiff was escorted from the infirmary, by two correction officers, to Cell No. 257 in the Special Housing Unit.

53.     Upon plaintiff's entering the Special Housing Unit, a correction officer removed his clothes, which were covered with blood and urine, and, upon information and belief at defendant LOFRESE's direction, disposed of them.

54.     Plaintiff was then provided with new clothing.

55.     Approximately one hour following plaintiff's aforementioned beating by defendants, defendant TUCKER came to the cell that plaintiff had been housed in prior to the beating and intentionally and maliciously damaged, destroyed and discarded plaintiff's personal property.

56.     Defendant TUCKER used a night stick to break plaintiff's radio and fan, threw plaintiff's cosmetics, food, cassette tapes, paperwork and sneakers into the corridor and yelled out, "Yard sale.  If you want it, come get it."

57.     The inmates in the housing area proceeded to take all the aforementioned property of plaintiff.

58.     Defendant TUCKER also threw baby powder and baby oil over whatever property he had left inside plaintiff's cell.

59.     Defendants proceeded to concoct a false account of the aforementioned incident, claiming that plaintiff had been the aggressor and that it had been necessary for them to subdue him.

60.     Defendants uniformly stated that they had used only "body holds" to subdue plaintiff.

61.     A Tier 3 hearing commenced on July 11, 2014, and concluded on August 6, 2014.

62.     Defendant RUSSO served as the hearing officer at the Tier 3 hearing.

63.     Officer KINNE brought the charges against plaintiff.

64.     Defendant KINNE falsely and maliciously alleged that plaintiff had engaged in violent conduct, had created a disturbance, had assaulted staff, had refused a direct order and had made threats.

65.     The testimony against plaintiff at the hearing was provided by defendants KINNE, ESTABROOK, TUCKER, CONWAY and LAURIA.

66.     The aforementioned defendants testified, falsely, that plaintiff had initiated the physical encounter, that they had taken only appropriate measures to subdue him, and that, during the altercation, plaintiff had exclaimed that he had AIDS and was going to spit from his bloodied mouth onto defendants.

67.     Plaintiff requested that five named inmate witnesses testify at his hearing.

68.     However, plaintiff was informed by a Sergeant M. Palmer that the witnesses had stated that they did not wish to testify.

69.     When plaintiff asked Sergeant Palmer why the witnesses would not testify, Palmer stated that none of them had given a reason.

70.     Defendant RUSSO intentionally failed and refused to provide plaintiff with the forms signed the by the five inmates he had requested as witnesses, documenting their refusal to testify.

71.     Rather, upon information and belief, the forms were signed by Sergeant M. Palmer.

72.     Defendant RUSSO failed and refused to question any of plaintiff's five witnesses to ascertain why they allegedly did not wish to testify.

73.     At the conclusion of the hearing, defendant RUSSO found plaintiff guilty of the charges of violent conduct, assault on staff and refusing a direct order.

74.     Plaintiff was found not guilty of the charges of creating a disturbance and making threats.

75.     Plaintiff was penalized by being placed in solitary confinement for a period of one hundred twenty days, along with a loss of packages, telephone privileges and commissary.

76.     Plaintiff administratively appealed the result of the disciplinary hearing.

77.     Plaintiff's appeal was denied.

78.     Plaintiff commenced a pro se CPLR Article 78 proceeding in Supreme Court, Albany County.

79.     Supreme Court, Albany County transferred the proceeding brought pursuant to Article 78 to the Appellate Division, Third Department.

80.     The Appellate Division, in its decision in Young v. Prack, 142 A.D.3d 1226 (3d Dept. 2016), found that the hearing officer's determination was supported by substantial evidence.

81.     Contrary to plaintiff's contention, the Appellate Division found that plaintiff's five witnesses had signed witness refusal forms.

82.     The Appellate Division went on to find that, because plaintiff had not asked the hearing officer to make further inquiry as to why the inmate witnesses had allegedly refused to testify at the hearing, the issue was unpreserved for their review.

## AS AND FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. §1983)

83.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "82" hereinabove as if more fully set forth at length herein.

84.     Defendants, acting under color of state law, violated plaintiff's right to be free from cruel and unusual punishments, guaranteed to him by the eighth amendment to the Constitution of the United States in that they, without any cause or justification therefor, intentionally, maliciously and sadistically physically assaulted him with such severity as to cause him severe and permanent injury.

85.     As a result of the aforementioned violations of plaintiff's right to be free from cruel and inhuman punishments, by the defendants, while they were acting under color of state law, plaintiff has been damaged in an amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against the defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
### (42 U.S.C. §1983)

86.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "85" hereinabove as if more fully set forth at length herein.

87.    Defendants, acting under color of state law, violated plaintiff's right to a fair trial, guaranteed to him by the fourteenth amendment to the Constitution of the United States, in that they maliciously and intentionally prepared and submitted false charges against him, testified falsely at plaintiff's Tier 3 hearing and denied him his right to have his witnesses be heard at the hearing, all resulting in his being found guilty and being placed in solitary confinement for one hundred twenty days and being deprived of packages, telephone calls and commissary during that period.

88.    As a result of the aforementioned violation of plaintiff's right to a fair trial by the defendants, while they were acting under color of state law, plaintiff has been damaged in an amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against the defendants.

WHEREFORE, plaintiff, AARON ISAIAH YOUNG, demands judgment against defendants, C.O. CHRISTOPHER J. KINNE, C.O. BRUCE D. TUCKER, C.O. SCOTT A. RUPERT, C.O. TROY LAURIA, C.O. CHAD ESTABROOK, SERGEANT MICHAEL D. LOFRESE, LIEUTENANT JOHN B. HOEFLING and CAPTAIN A. RUSSO, as follows:

FIRST CAUSE OF ACTION:  An amount sufficient to compensate the plaintiff for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against the defendants;

SECOND CAUSE OF ACTION:  An amount sufficient to compensate the plaintiff for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against the defendants.

In addition, plaintiff demands the costs and disbursements of this action, including his attorney's fees, pursuant to 42 U.S.C. §1988.

Dated: Kew Gardens, New York
     June 30, 2017

ALAN D. LEVINE, ESQ.
Attorney for Plaintiff
80-02 Kew Gardens Road, Suite 307
Kew Gardens, New York 11415
(718) 793-6363
Our File No. 2383